[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 491.]

CINCINNATI BAR ASSOCIATION *v.* WHITE.

[Cite as *Cincinnati Bar Assn. v. White*, 1997-Ohio-160.]

*Attorneys at law—Misconduct—Indefinite suspension—Improper solicitation of clients—Commingling client funds with personal funds and funds used to operate law office.*

(No. 97-808—Submitted July 7, 1997—Decided October 1, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-13.

_____

{¶ 1} On February 5, 1996, relator, Cincinnati Bar Association, filed a complaint charging that respondent, Andrew G. White III of Cincinnati, Ohio, Attorney Registration No. 0010310, violated several Disciplinary Rules by using an attorney referral service that was not sponsored or approved by any bar association, and by commingling his clients' funds with his own. After respondent filed his answer and the parties submitted stipulations and exhibits, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board") found the following facts.

{¶ 2} Respondent was the sole shareholder, director, and officer of Raw Data Corporation ("Raw Data"), whose only purpose was to recommend and promote the use of respondent's services as a lawyer to auto accident victims. Raw Data employed Pat Harris and Karla Horn to inspect auto collision reports filed by police agencies and collect the names of persons identified as not being "at fault." Harris and Horn would then telephone those persons, ostensibly to help them to find a lawyer, but in fact simply to refer them to respondent. Harris was paid for each referral to respondent; Horn was paid a weekly salary. Raw Data, which was not approved by the Cincinnati Bar Association, did not fit the definition of a legal

aid office or other legal entity entitled to recommend professional employment. Raw Data referred at least thirty clients to respondent.

{¶ 3} In addition, respondent agreed with Charles Mayabb, a chiropractor, to refer his personal injury clients to Mayabb for treatment in exchange for medical reports that Mayabb would provide to respondent for use in settling or litigating claims. Respondent further agreed to pay Mayabb's fees when a personal injury claim was resolved for one of his clients. Respondent also leased office space to Mayabb in the building where respondent maintained his own office.

{¶ 4} When respondent obtained funds pursuant to settlement agreements for several of his clients whom he had solicited through Raw Data, he placed the funds in various bank accounts, where they were commingled with his personal and law office monies. He also delivered settlement statements to his clients indicating that a portion of their settlements would be withheld by him and paid to Mayabb to satisfy their debts for chiropractic services. The settlement statements also purported to constitute mutual releases between respondent and each client with respect to all matters relating to respondent's representation.

{¶ 5} However, respondent failed to pay the withheld amounts to Mayabb. Instead, respondent converted the monies to his own use by taking a "set-off" against amounts that he claimed were owed to him by Mayabb under their lease agreement. Because respondent did not pay Mayabb, Mayabb threatened legal action against respondent's clients.

{¶ 6} The panel concluded that respondent's conduct violated DR 1-102(A)(2) (circumventing a Disciplinary Rule through the actions of another), 1-102(A)(3) (engaging in conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 2-103(B) (compensating a person to recommend his employment), 2-103(C) (requesting a person to recommend or promote his services), 7-101(A)(3) (prejudicing a client during the course of the professional relationship), and 9-102(A) and (B)(4) (failing

2

to promptly pay to the client upon request funds in the possession of the lawyer which the client is entitled to receive). Despite favorable mitigation evidence indicating respondent's good character, the panel recommended that respondent be suspended from the practice of law for two years with the final year stayed and that he be placed on probation for one year.

{¶ 7} The board adopted the findings and conclusions of the panel, but recommended that the respondent be suspended indefinitely from the practice of law.

———————————

*E. Hanlin Bavely* and *Adam P. Hall,* for relator.

*John H. Berlew,* for respondent.

———————————

***Per Curiam.***

{¶ 8} DR 2-103(B) provides that "[a] lawyer shall not compensate or give anything of value to a person or organization to recommend or secure the lawyer's employment by a client * * *." The only organizations excepted from this rule are those that can qualify under DR 2-103(D). Such excepted organizations are a legal aid society or a public defender office, a military legal assistance office, a qualified legal referral service, or a bona-fide organization offering a legal services plan that complies with certain conditions. The purpose of DR 2-103 is to ensure that individual lawyers do not avoid the advertising and solicitation restrictions of the Code of Professional Responsibility.

{¶ 9} In this case respondent formed his own corporation whose sole purpose was to find potential clients and direct them to respondent. Respondent paid the employees of that corporation, which did not qualify under DR 2-103(D). Thus, respondent clearly violated DR 2-103(B) as found by the board. In a similar case, *Disciplinary Counsel v. Heard* (1985), 16 Ohio St.3d 18, 16 OBR 369, 475 N.E.2d 784, where an attorney created an unincorporated association to solicit

individuals whose property was subject to foreclosure, we imposed a one-year suspension.

{¶ 10} In addition, respondent commingled client funds with his own personal funds and the funds used to operate his law office. DR 9-102(A) requires that client funds be deposited in one or more identifiable bank accounts in which no funds of the lawyer or law firm are deposited. As the board found, by depositing client funds in accounts which contained his own personal and business funds, respondent violated DR 9-102(A).

{¶ 11} Moreover, respondent, having received settlement funds for clients, was required to hold such funds as a fiduciary for those clients. It is axiomatic that for respondent to be able to take a setoff , he must hold the debits and credits in the same capacity. Here, respondent used settlement funds of his clients that he held as a fiduciary to set off against his personal claim against Mayabb for rent. Respondent was not entitled to set off fiduciary funds against personal debts owed to him. His use of client funds in this manner was tantamount to conversion of his clients' monies. Funds may not be withdrawn from a client's account for a lawyer's own purposes whether for personal or private business use. *Columbus Bar Assn. v. Robinson* (1979), 59 Ohio St.2d 62, 13 O.O.3d 56, 391 N.E.2d 1019; *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 23 O.O.3d 541, 433 N.E.2d 602.

{¶ 12} In view of respondent's violation both of his duty to the profession to avoid improper solicitation and his duty to his clients not to commingle or convert their funds, we agree with the board that a more stringent sanction than that recommended by the panel is appropriate. Respondent is hereby indefinitely suspended from the practice of law in Ohio. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____